UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

SEP - 7 2007

J. T. NOBLIN, CLERK
BY_____ DEPUTY

CHAUNCEY M. DEPREE, JR.

     Plaintiff,

V.                                                          CIVIL ACTION NO. 2:07cv 185 KS-MTP

MARTHA SAUNDERS, individually and as President of the University
of Southern Mississippi, DARRELL J. GRIMES, Individually and
as former Provost University of Southern Mississippi,
ALVIN J. WILLIAMS, Individually and as Interim Dean of the
College of Business, University of Southern Mississippi, STEVEN
JACKSON, Individually and as Interim Director of the School of
Professional Accountancy and Information Systems,
STANLEY X. LEWIS, individually and as former Director of
the School of Professional Accountancy and
Information Systems, FARHANG NIROOMAND, individually and
as former Associate Dean of the College of Business,
D. HAROLD DOTY, individually and as former Dean
of the College of Business, and JOHN ALBERT BROWN, JAMES HENDERSON,
MARY ANDERSON, PATRICIA MUNN, RODERICK POSEY, CHARLES JORDAN,
GWENDOLYN PATE, individually, and JOHN DOES 1-80.

    Defendants.

## VERIFIED COMPLAINT

## JURY TRIAL REQUESTED

    COMES NOW Chauncey M. DePree, Jr., by and through Counsel, and for his complaint

against Defendants, states as follows:

    1.    Plaintiff, Chauncey M. DePree, Jr. is a Professor of Accounting in the School of

Accountancy and Information Systems, College of Business, University of Southern Mississippi,

Hattiesburg, MS.  The conduct complained of hereinafter deprived Plaintiff of rights, privileges

and immunities secured by the Constitution and laws of the United States.

2.      Defendant, Martha Saunders, was at all times relevant hereto President of University of Southern Mississippi.  University of Southern Mississippi is a public university under the jurisdiction and control of the Institutions of Higher Learning of the State of Mississippi (IHL).  Saunders is employed as the chief executive officer of University of Southern Mississippi by the Institutions of Higher Learning to implement the policies of the Institutions of Higher Learning.  Saunders acted under color of state law.  Saunders is sued in her official and individual capacity.

3.      Darrell Jay Grimes is a Professor of Marine Microbrial Ecology, Department Of Coastal Sciences, Gulf Coast Research Laboratory, Marine Microbiology Group, at its Gulf Coast Campus located at Ocean Springs, Mississippi.  Grimes is a former Provost of University of Southern Mississippi.  Grimes acted under color of state law.  Grimes is sued in his official and individual capacity.

4.      Alvin J. Williams is a professor of Management and the Interim Dean of the College of Business, University of Southern Mississippi.  Williams acted under color of state law.  Williams is sued in his official and individual capacity.

5.      Steven Jackson is an associate professor of Accounting and Interim Director of School of Accountancy and Information Systems, College of Business, University of Southern Mississippi.  At all times referred to herein Jackson acted under color of state law.  Jackson is sued in his official and individual capacity.

6.      James Henderson is an associate professor of Accounting, School of Accountancy and Information Systems, College of Business, University of Southern Mississippi.  Henderson engaged in concerted action with public and private persons to deprive Plaintiff of Federal Constitutional Rights through color of state law.

2

7.      Mary Anderson is an assistant professor of Accounting, School of Accountancy and Information Systems, College of Business, University of Southern Mississippi. Anderson engaged in concerted action with public and private persons to deprive Plaintiff of Federal Constitutional Rights through color of state law.

8.      John Albert Brown is an instructor of Accounting, School of Accountancy and Information Systems, College of Business, University of Southern Mississippi at its Gulf Coast campus, located in Ocean Springs, Mississippi. Brown engaged in concerted action with public and private persons to deprive Plaintiff of Federal Constitutional Rights through color of state law.

9.      Patricia Munn is an instructor of Accounting, School of Accountancy and Information Systems, College of Business, University of Southern Mississippi. Munn engaged in concerted action with public and private persons to deprive Plaintiff of Federal Constitutional Rights through color of state law.

10.     Roderick Posey is a professor of Accounting, School of Accountancy and Information Systems, College of Business and former interim Director of School of Accountancy and Information Systems, Former Associate Dean and Former Interim Dean, College of Business, University of Southern Mississippi. Posey acted under color of state law. Posey engaged in concerted action with public and private persons to deprive Plaintiff of Federal Constitutional Rights through color of state law.

11.     Charles Jordan is a professor of Accounting, School of Accountancy and Information Systems, College of Business, University of Southern Mississippi. Jordan engaged in concerted action with public and private persons to deprive Plaintiff of Federal Constitutional Rights through color of state law.

12.    Gwendolyn Pate is an associate professor of Accounting, School of Accountancy and Information Systems, College of Business, University of Southern Mississippi. Pate engaged in concerted action with public and private persons to deprive Plaintiff of Federal Constitutional Rights through color of state law.

13.    Stanley Lewis was a professor of Management Information Systems and former interim Director of School of Accountancy and Information Systems, College of Business, University of Southern Mississippi. Lewis is currently an Associate Professor of Accounting at Troy State University, Troy, Alabama. Lewis acted under color of state law. Lewis is sued in his official and individual capacity.

14.    Farhang Niroomand is a professor of Economics, Department of Economics, Finance, and International Business, College of Business, and former Associate Dean, College of Business, University of Southern Mississippi. Niroomand acted under color of state law. Niroomand engaged in concerted action with public and private persons to deprive Plaintiff of Federal Constitutional Rights through color of state law.

15.    D. Harold Doty is a professor of Management, Department of Management and Marketing, College of Business, and former Dean, College of Business, University of Southern Mississippi. Doty acted under color of state law. Doty is sued in his official and individual capacity.

16.    Upon information and belief, Plaintiff alleges claims against John Doe Defendants. Plaintiff states that John Doe Defendants were acting under the color of state law. John Doe Defendants engaged in concerted action with public and private persons to deprive Plaintiff of Federal Constitutional Rights through color of state law. Upon ascertaining the true

identities of the John Doe Defendants, Plaintiff intends to file an amended complaint which will identify them more specifically.

## JURISDICTION

17.     This is a suit for federal civil liberties violations, brought pursuant to 42U.S.C. § 1983 and § 1988 and the First, Fifth, and Fourteenth Amendments to the United States Constitution.

18.     The Court has jurisdiction of this action under 28 U.S.C. § 1331, as an action arising under the Constitution of the United States, and 28 U.S.C. §1343(a)(3) to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States; Plaintiff seeks declaratory and injunctive relief to vindicate and protect his rights arising under the Constitution of the United States.  This Court also has jurisdiction to adjudicate related state law claims pursuant to the supplemental jurisdiction statute.

19.     Venue is properly laid pursuant to 28 U.S.C. § 1391(b), in the Southern District of Mississippi, because all parties, except Lewis reside or are located in this district.  The acts and conduct complained of occurred in substantial part in this District.

## STATEMENT OF FACTS

20.     On or about August 21, 2007, Defendant Saunders, wrote a letter addressed to Plaintiff, stating that he was suspended from all duties, except research, on the basis of allegations contained in nine letters and memoranda attached to the subject letter, and that his tenure and employment were subject to termination. (Exhibit 1)  The subject letter was delivered to Plaintiff by Defendant Williams on or about August 22, 2007, with instructions that he was to leave Greene Hall, where his office and classes are located, effective immediately.

5

21.     The sole basis for suspension identified in the letter from Defendant Saunders were the nine letters and memoranda variously dated August 20 and 21, 2007.  The content of the letters and memoranda, which are incorporated by reference as if set out in their entirety herein, are malicious and false, and on their face, demonstrate that Defendants intended to, and did in fact, retaliate against Plaintiff as a direct result of Plaintiff's exercise of rights guaranteed to him by the First Amendment to the Constitution of the United States.

22.     Under the specific terms of Saunders' letter, Plaintiff was suspended from all teaching and service duties and directed not to enter Greene Hall at University of Southern Mississippi.  Plaintiff's duties, including teaching and service are performed in Greene Hall. Plaintiff was further advised that as a result of the false and malicious statements that "[t]his matter could result in disciplinary action against you, up to and including revocation of tenure and termination of employment."  (Exhibit 1) The letter from Saunders authorizing Plaintiff's suspension does not contain specific findings supporting said suspension, nor does said letter supply a factual basis for its adoption.  Further, upon information and belief, Saunders acted without performing any investigation of the allegations.

23.     Plaintiff was not afforded an opportunity to respond to the false, malicious allegations of the letters and memoranda.  The action taken by Saunders was unreasonable, arbitrary, capricious, discriminatory, and confiscatory, and imposed an unnecessary and unreasonable hardship with respect to Plaintiff.

24.     With the exception of Saunders, Defendants have engaged in a pattern of conduct by which they have attempted to procure Plaintiff's discharge from the University and which demonstrate a pattern of malicious and defamatory conduct.  These actions by Defendants were

intended to chill Plaintiff's exercise of his First Amendment Rights for speaking as a citizen on matters of public concern.

25.     On information and belief, Plaintiff states Defendants Posey, Henderson, Munn, and Jordan commenced a pattern of malicious defamatory behavior intended to punish Plaintiff for the exercise of his First Amendment Rights sometime in the 1990s.  Their wrongful behavior has continued through the present date.  At that time, Plaintiff objected to the manner in which evaluations of other faculty were conducted by the then-Director of the School of Accountancy and Information Systems James Crockett.  Evaluations are directly related to faculty rewards including salary and benefits.  Plaintiff subsequently objected to the manner in which University of Southern Mississippi funds were allocated and expended.  Plaintiff was advised that, contrary to the requirements of the Faculty Handbook, then-President Horace Fleming and then-Provost Budd Ginn would not take any action to investigate the subject allegations concerning potential misuse of public funds.

26.     Thereafter, certain Defendants, including Munn, Jordan, Henderson and Pate wrote a letter to then-President Horace Fleming, clearly aimed at Plaintiff, to take any action necessary to silence Plaintiff's complaints.  (Exhibit 2)  At all times, Plaintiff's complaints were reasonable and appropriate and made in accordance with the Faculty Handbook and the procedures of the Institutions of Higher Learning.  Plaintiff's complaints addressed matters of public interest, including use of public resources.  On information and belief, Plaintiff states that Defendants Munn, Jordan, Henderson, Posey, Pate and other Defendants, both named and John Doe Defendants, attempted without good cause, on at least two additional occasions, to have disciplinary action taken against Plaintiff.  At all times, said efforts by Defendants were based on

false and malicious claims which were intended to retaliate against Plaintiff for the exercise of his First Amendment rights.

27.    Certain Defendants, including Munn, Jordan, Henderson, Posey and John Doe Defendants, thereafter undertook a malicious smear campaign against Plaintiff including slandering Plaintiff to faculty, staff, and administrators with the intent to picture Plaintiff as mentally deranged and violent.  Defendants, in an effort to exclude Plaintiff from the normal activities of his job, told co-workers that Plaintiff recorded their statements with intent to use them for an inappropriate purpose.  Said claims were false and known to them to be false.  This smear campaign continued unabated for a period of years, albeit largely in secret.

28.    As affirmatively stated in the letters and memoranda attached to Exhibit 1, Defendants have retaliated against Plaintiff in substantial part because Plaintiff maintains a website which is viewed by them as critical of the College of Business and some of its faculty and administrators.  (http://www.usmnews.net).  The website publishes reports, opinion pieces and cartoons on a broad range of issues, such as the degree of mutual confidence existing between administration and faculty, the extent to which good teaching and good research are rewarded, the extent to which faculty opinions are listened to and respected, the effectiveness of the administration in dealing with grievances, the accuracy and completeness of information used to evaluate teachers, student costs, accreditation, the use of public funds, and other matters of public concern. The website is not maintained as part of Plaintiff's duties, is not hosted on University servers, is not financially supported by the University, or maintained or prepared on University premises.  The content or maintenance of the website is not required by Plaintiff's duties as a public employee. The content of the website addresses matters of public importance and concern. Comment upon these matters is therefore protected speech.

29.     With respect to the website, all interested parties are offered the opportunity to submit reports or commentary, subject to the limitation that demonstrable facts support the claims and that any conclusions drawn in the reports constitute fair comment on the facts. The majority of articles and commentary published on the subject website are written by persons other than Plaintiff. In fact, Defendant Jordan, among other College of Business faculty, has submitted commentary concerning publications found on the website. Jordan's comments, as well as that of other faculty and citizens, have been published. (Exhibit 3). The website has been in existence for more than two years.

30.     During the spring 2007 semester, Defendant Doty accosted Plaintiff in the hallway and ordered Plaintiff to remove flyers from public areas of the University advertising his website. In the presence of students and other faculty, Doty referred to Plaintiff as an "idiot". When Plaintiff objected to the unlawful restraint on his First Amendment rights and violation of University Rules, Plaintiff was informed, several weeks later, by Interim Chair Lewis that he had violated no University rules by posting said flyers.

31.     Defendants who wrote and signed letters and/or memoranda attached to Exhibit 1 admit that their efforts to have Plaintiff's employment terminated are also based, in substantial part, on complaints filed by Plaintiff with the Association to Advance Collegiate Schools of Business (AACSB), an international organization which accredits business schools, including the University of Southern Mississippi's College of Business. Plaintiff's complaints were based on two documented incidents of plagiarism by faculty and/or administrators within the College of Business. (Exhibits 4 and 5) The plagiarized materials were removed from the College of Business submission to AACSB without notice to Plaintiff. However, the College of Business

did not remove the plagiarized materials from materials submitted to AACSB in support of School of Accountancy and Information Systems' separate Accounting accreditation.

32.     Plaintiff's claims concerning acts of plagiarism were at all times supported by facts, including an email drafted by Defendant Jordan, at the instruction of Defendant Doty, to the Dean of the Harmon College of Business, Central Missouri State University (CMSU), the school from which the document had been copied.  By his email, Jordan sought permission, after the plagiarism had been identified and reported by Plaintiff, to copy the written materials found on CMSU website "without proper citation."  (Exhibit 4)  Plagiarism is defined by the College of Business Academic Integrity Policy as "...copying words, concepts, or ideas from any source and submitting the material as one's own without acknowledging the source by the use of footnotes, quotation marks, or both..."  (Exhibit 6)  Prior to Plaintiff's suspension, no one advised Plaintiff that Plaintiff's assertions had been challenged or contended that he mischaracterized these actions.  Furthermore, prior to Plaintiff's suspension, no one advised Plaintiff that Plaintiff's action in reporting the allegations to College of Business' accrediting agency was improper.

33.     Thereafter, a comparison of the College of Business integrity policy, which formed part of the basis of College of Business's reaccreditation documents, showed that the College of Business' integrity policy was copied almost verbatim, without any citation, from the integrity policy of the Whitman School of Business at Syracuse University.

34.     In keeping with the University of Southern Mississippi Faculty Handbook, Plaintiff provided documentation concerning the plagiarized documents to Cecil Burge, University of Southern Mississippi's Vice President for Research, and John Harsh, Ombudsman. Despite the procedures set forth in the USM Faculty Handbook, Plaintiff was referred to the

EEOC office for University of Southern Mississippi. Plaintiff was told by the EEOC office for University of Southern Mississippi that it had no authority to or interest in investigating allegations of plagiarism. Contrary to the express language of the Faculty Handbook, Harsh denied the existence of any internal University of Southern Mississippi mechanism for addressing claims of potential faculty or administrative plagiarism. Prior to Plaintiff's suspension, no one advised Plaintiff that Plaintiff's assertions had been challenged or contended that he mischaracterized these actions. Furthermore, prior to Plaintiff's suspension, no one advised Plaintiff that Plaintiff's action in reporting the allegations to College of Business' accrediting agency was improper.

35.    The plagiarism of the integrity policy was reported to AACSB in accordance with the published rules and guidelines of AACSB. Copies of all documents submitted to AACSB were also provided to administrative authorities at University of Southern Mississippi and College of Business. Any citizen is entitled to file complaints with AACSB concerning matters that touch upon accreditation of member schools.

36.    Grievances filed with an accrediting agency and reports and commentary on plagiarism within the College of Business are a matter of public concern and not made in Plaintiff's role as a public employee.

37.    As part of his teaching and research duties, Plaintiff developed a case study concerning an agreement between College of Business and The Wall Street Journal, which is referred to as the Wall Street Journal Academic Partnership Program. The case study concerns issues directly related to management accounting, including cost-benefit analysis and ethics. Defendant Doty, without making any objection to Plaintiff concerning the subject case, secretly directed Defendant Posey to investigate Plaintiff's professional ethics. (Exhibit 7) Although

11

Posey found no violation of plaintiff's professional ethics, Defendants Posey and Doty retaliated against Plaintiff by, *inter alia*, assigning punitive evaluations. The case study was independently reviewed and accepted for presentation by and was presented at the 12th Ethics Symposium of the annual meeting of the American Accounting Association.

38.    In retaliation for Plaintiff's exercise of his constitutionally protected speech on matters of public concern, Plaintiff received punitive evaluations in 2003, 2004, 2005, and 2006. These punitive evaluations constituted adverse action with respect to Plaintiff's employment.

39.    In 2003, Plaintiff filed a complaint in accordance with University of Southern Mississippi and College of Business procedures. The Tenure and Promotion Committee was charged with the responsibility of reviewing the Plaintiff's Complaint. The Tenure and Promotion Committee unanimously found that the evaluations as to Plaintiff's teaching and research, as assigned by Posey and ratified by Doty, were arbitrary and capricious. (Exhibit 8). Defendant Doty in retaliation for Plaintiff's exercise of his First Amendment Rights, and in support of the behind-the-scenes campaign by Defendants Munn, Jordan, Posey and other Defendants to punish Plaintiff in retaliation for exercise of his First Amendment Rights, overruled the Tenure and Promotion Committee. (Exhibit 9)  As a result of the retaliatory evaluation, Plaintiff was awarded minimum salary increases and the evaluation was reported to the Commissioner of the Mississippi Institutions of Higher Learning with a statement that Plaintiff was subject to post-tenure review. Post-tenure review is a mechanism by which tenure may be revoked for lack of productivity as evidenced by annual evaluations. As a consequence of Doty's intentional and malicious acts, Plaintiff's interest in continued employment was placed at risk.

40.     Plaintiff appealed the decision by Defendant Doty to Defendant Grimes, who was, at that time, Provost for University of Southern Mississippi.

41.     In 2004 and 2005, Plaintiff again received marginal annual evaluations, punitive teaching schedules, and was excluded from participating in School of Accountancy and Information Systems and College of Business service activities.  All such actions were taken in retaliation for Plaintiff's exercise of his First Amendment rights.

42.     Grimes took no action on Plaintiff's 2003 appeal until December 2006.   In December 2006, Grimes found with respect to Plaintiff's 2003 appeal that Doty's decision concerning Plaintiff's research was in error and improperly low.  Grimes specifically held, "It is my carefully considered opinion that you did not deserve a rating of zero (0) for your research accomplishments in 2003, and therefore, concur with the Promotion and Tenure Committee's findings."  Grimes did not make any decision concerning Plaintiff's teaching scores.  (Exhibit 10)  Shortly thereafter, and without explanation, Grimes withdrew his decision finding that Plaintiff's research evaluation was improperly low.   Thereafter, contrary to the rules and regulations established in the Faculty Handbook, Grimes referred "all grievances" filed by Plaintiff for his 2003, 2004, and 2005 evaluations to a newly formed College Advisory Committee. The purpose of referring Plaintiff's appeals and grievances to the College Advisory Committee was to insure that Plaintiff would receive a negative outcome on all appeals, including appeals on which the properly designated Tenure and Promotion Committee had previously found Doty's determinations to be arbitrary and capricious.   Grimes, without explanation, ratified the College Advisory Committee's findings on June 6, 2007.  Grimes failed and refused to provide Plaintiff with the University rules and regulations upon which he conducted the appeals process for the 2003, 2004 and 2005 appeals.  Plaintiff appealed Grimes'

findings on the 2003, 2004 and 2005 appeals to Saunders.  Saunders has taken no action on Plaintiff's appeals.

43.     In the Report of Annual Evaluation 2006, (Exhibit 11) Lewis made a series of unsubstantiated and false statements by which to arbitrarily and capriciously reduce Plaintiff's evaluation for teaching, research, and service scores, to "unacceptable" and by which to place Plaintiff's employment at risk by invoking post tenure review.

44.     In Plaintiff's 2006 evaluations, Lewis stated that Plaintiff's student evaluations were 4.22/5.0, significantly above the average.  But for Lewis' retaliation for Plaintiff's exercise of his First Amendment Rights, Plaintiff would have been entitled to a score of "excellent".  In an effort to justify reducing Plaintiff's teaching scores to an unsatisfactory score of 1, Lewis claimed that "ancillary evidence suggests that you have intensified your use of the classroom as a public forum regarding personal issues you have with the university. I have concluded that your classroom performance has been carefully managed to insure acceptable student evaluation 'numbers,' while the course content is presented in a manner that allows you to use the course to achieve personal goals that are not germane to the course. . .".

45.     Plaintiff had not used his classroom as a public forum regarding personal issues with the University.  Plaintiff has no knowledge of any method by which to manage his classroom performance to insure acceptable student evaluation numbers, other than by being a good teacher.  Lewis refused to provide Plaintiff with any such "ancillary evidence" or guidance as to materials allegedly being taught by Plaintiff that Lewis or any other representative of University of Southern Mississippi or College of Business considered inappropriate.  In an effort to determine the basis for the claims asserted by Lewis, Plaintiff filed a request for information under the Mississippi Open Records Act.  Lee Gore, University Counsel, responded to the

request for information stating, in a letter dated June 1, 2007, that "[a]fter diligent search and inquiry, I report to you that there are no documents" supporting Lewis' claims. (Exhibit 12)  In fact, Lewis' statements were arbitrary, capricious, false, malicious and for the sole purpose of punishing Plaintiff for the exercise of his First Amendment rights.

46.     Lewis acknowledged that Plaintiff had published an article in *Strategic Finance*. However, Lewis assigned an evaluation a score of 1 (unsatisfactory) on the basis that "[t]he publication was reviewed during the AACSB re-affirmation visit and determined to be out-of-field and not relevant to assigned courses in the field of accounting."  Lewis refused to advise Plaintiff who made this determination or the basis of the determination. S*trategic Finance* (formerly known as *Management Accounting*), is the "flagship publication of the Institute of Management Accountants (IMA®), the world's leading associations for management accounting and finance professionals."    (http://www.imanet.org/publications_sfm.asp)    Furthermore, *Strategic Finance* is rated as an A-level journal by School of Accountancy and Information Systems, which would, but for Lewis' retaliation against Plaintiff for the exercise of his First Amendment rights, under School of Accountancy and Information Systems rules would entitle Plaintiff to a score of "outstanding" in research. The article has also been reprinted in business ethics journals.  According to AACSB, the College of Business's accrediting agency, ethics is and should be a strong component in teaching management accounting.  Lewis arbitrarily and capriciously evaluated the paper written by Plaintiff as "unsatisfactory".

47.     As Interim Director of School of Accountancy and Information Systems, Lewis knew that Plaintiff was assigned to teach classes in management accounting.

48.     Lewis refused to provide Plaintiff with any evidence concerning the determination that his "publication was reviewed during the AACSB re-affirmation visit and determined to be

out-of-field and not relevant to assigned courses in the field of accounting" or who had allegedly reviewed the document and made such determination.  In an effort to determine the basis for the claims asserted by Lewis, Plaintiff filed a request for information under the Mississippi Open Records Act.  Lee Gore, University Counsel, responded to the request for information stating, in a letter dated June 1, 2007, that "[a]fter diligent search and inquiry, I report to you that there are no documents" supporting Dr. Lewis' claims.  (Exhibit 12)  In fact, Lewis' claims were arbitrary, capricious, malicious and false.

49.    In the 2006 evaluation, Lewis claimed that Plaintiff's "service/professional development for the year is unsatisfactory.  Unfortunately you have elected to exclude yourself from being a positive contributing member of the faculty for the school, college and profession by your decision to not participate in a constructive manner."  Lewis claimed that "[o]thers simply do not wish to work with [Plaintiff] in committee and team activities given [his] insistence that you record meetings and use transcripts in a manner that presents a negative representation of other members of the committees and teams."  Lewis's claims are malicious, false and in retaliation for Plaintiff's exercise of rights guaranteed by the First Amendment.

50.    Plaintiff informed Lewis that he had not recorded anyone or any meeting at the University of Southern Mississippi.  In fact, Plaintiff has never recorded anyone or any meeting at the University of Southern Mississippi.  Lewis' evaluation was based exclusively on malicious, false statements by Defendants employed in the College of Business.  Lewis' retaliatory evaluation was arbitrary and capricious and intended to and did punish against Plaintiff for Plaintiff's exercise of rights guaranteed by the First Amendment.

51.    In an effort to determine the basis for the claims asserted by Lewis, Plaintiff filed a request for information under the Mississippi Open Records Act.  Lee Gore, University

Counsel, responded to the request for information stating, in a letter dated June 1, 2007, that "[a]fter diligent search and inquiry, I report to you that there are no documents" supporting Lewis' claims. Lewis' claims were malicious and false and intended to punish Plaintiff in retaliation for exercise of Plaintiff's rights under the First Amendment.

52.     Plaintiff filed a grievance in accordance with the Faculty Handbook concerning his 2006 evaluation. Contrary to the Faculty Handbook, Lewis and then Williams took no action on Plaintiff's grievance. Upon appeal to Grimes, Plaintiff was advised that Grimes found no basis upon which to reverse Lewis' evaluation. However, Grimes refused to provide any factual basis upon which his determination was made. Plaintiff's grievance was thereupon appealed to Saunders in June 2007. However, to date, no action has been taken by Saunders on that appeal.

53.     As a result, and in spite of repeated requests, including grievances, appeals, and separate written requests, Plaintiff has not had the benefit of guidance as to what is expected of him in his professional duties for more than four years. Rather, Plaintiff has received punitive, retaliatory evaluations intended to retaliate for the exercise of his First Amendment Rights.

54.     Defendants continued the malicious, slanderous campaign against Plaintiff which was intended to prevent his exercise of his First Amendment Rights, by their continued allegations that Plaintiff had recorded other faculty and employees, using these claims, in part to justify Plaintiff's wrongful suspension.

55.     On May 4, 2007, Plaintiff attended an end of the year faculty meeting of the College of Business. During the course of the meeting, Plaintiff did not actively participate, but merely observed the activity. At the end of the meeting, Williams invited Sami Dakhlia, an assistant professor of Economics, College of Business, University of Southern Mississippi to the front of the room. At that time, Dakhlia placed a transparency on an overhead projector. The

content of the transparency concerned Plaintiff's website. (Exhibit 13) Dakhlia invited anyone who disagreed with the contents of the document to stand and express his or her opinion. Because the document contained inaccurate statements which Plaintiff believed would be worthwhile to correct, Plaintiff stood and reiterated his position that afforded objecting faculty the opportunity to correct any errors on his website. However, a few of the approximately thirty faculty in attendance at the meeting began a verbal attack directed at Plaintiff. The attacking faculty demanded that the website be shut down. When it became obvious that none of the faculty who were attacking Plaintiff were interested in an open, orderly discussion, Plaintiff and four or five other faculty departed the meeting room.

56.    Dakhlia's presentation was not included on the agenda for the meeting, and Plaintiff was provided no notice of the presentation or its content. Defendants, except for Saunders, knew of the planned attack on Plaintiff and concealed it from him.

57.    Shortly after the meeting, Plaintiff went to Dr. Dakhlia to obtain a copy of the document presented by Dakhlia, with the intention of addressing his concerns in writing. When Plaintiff asked for a copy of the document, Dr. Dakhlia handed Plaintiff a transparency. Plaintiff was attempting to depart with the document when Defendant Niroomand verbally assaulted Plaintiff. Niroomand aggressively stepped close to Plaintiff, began waving pages of papers in Plaintiff's face, and repeatedly shouted that Plaintiff was a "son-of-a-bitch". Other faculty pulled Niroomand away from Plaintiff and into the Economics offices. Plaintiff reasonably believed that Niroomand intended to physically assault him thereby placing him in fear of imminent physical injury. Plaintiff thereupon left the building, went to the University Police Station where he filed an incident report.

58.    Plaintiff also reported this verbal attack by Niroomand to former President Thames, Commissioner of the Institutions of Higher Learning, Thomas Meredith, and others in positions of administrative responsibility.  No response was made to Plaintiff's complaints.

59.    Various Defendants, including Williams, Posey, Munn, Lewis, Jackson, Anderson, Pate, Brown, Jordan, Henderson and John Doe Defendants falsely and maliciously claimed that Plaintiff has created an atmosphere of physical fear.  No objective evidence was offered in support of Defendants' claims.  To the contrary, Defendants offer only vague allegations premised on repeated slander.  In fact, Defendant Jackson acknowledges that his negative perceptions of Plaintiff were created by "warnings" by other Defendants when Jackson first arrived on campus rather than any action by Plaintiff.

60.    Plaintiff did not commit any wrongful acts alleged in the memoranda and letters attached to Exhibit 1.  Furthermore, Plaintiff did not threaten, accost, or place any person in reasonable apprehension of physical harm.  To the extent that any person unreasonably perceived themselves to be at risk, the perceptions were created by repeated false, malicious claims by certain Defendants, including Munn, Posey, Pate, Anderson and John Doe Defendants

61.    Defendants' vague, secondhand accounts of fearing that Plaintiff might cause them physical injury are objectively unreasonable and based exclusively on gratuitously false and defamatory statements of individual Defendants, except Saunders, and John Doe Defendants. In fact, Defendants took no action to protect themselves from any alleged danger for nearly four months after the May 4, 2007, meeting.

62.    Various Defendants, including Munn, have for many years, continuing through the present date, created a hostile work environment for Plaintiff based on repeated and slanderous claims made to other faculty, administrators, and clerical staff.  Among the false and

malicious claims by Munn is that Plaintiff is "crazy" and "dangerous". Said claims have been wrongfully asserted over a number of years and are false and malicious and intended to injure Plaintiff.

63.    Each of the acts described above were intended to deprive Plaintiff of his First Amendment Rights and retaliate for Plaintiff's exercise of his First Amendment Rights.

64.    Each of the acts described above constitute an adverse employment action.

65.    Plaintiff has a property interest in his tenured position as professor of accounting. No legitimate reason exists to suspend Plaintiff or to take adverse employment action against Plaintiff.

## FIRST CAUSE OF ACTION

## VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS

66.    Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1 through 65 supra.

67.    The First Amendment of the United States Constitution provides that "[c]ongress shall make no law .... abridging the freedom of speech." U.S. CONST. amend. The Fourteenth Amendment makes this limitation applicable to the states, and their agents and agencies. *City of Ladue v. Gilleo*, 512 U.S. 43, 45 n.1, 129 L. Ed. 2d 36, 114 S.Ct. 2038 (1994).

68.    It is settled law that the First Amendment protects speech by employees commenting as citizens on a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 147, 103 S. Ct. 1684, 75 L. Ed. 2d 708, 720 (1983). The basis for according constitutional protection to private speech on the part of employees of a governmental agency is to allow the employees to participate freely in public affairs and avoid chilling the use of speech that the employer might

find objectionable. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968). See also, *Garcetti v. Ceballos*, 126 S.Ct. 1951 (2006).

69.    The First Amendment protects speech by employees commenting as citizens on a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 147, 103 S. Ct. 1684, 75 L. Ed. 2d 708, 720 (1983). The basis for according constitutional protection to private speech on the part of employees of a governmental agency is to allow the employees to participate freely in public affairs and avoid chilling the use of speech that the employer might find objectionable. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968).

70.    Plaintiff's status as a tenured faculty does not deprive him of his First Amendment rights. *Perry v. Sindermann*, 408 U.S. 593, 597-98, 33 L.Ed. 2d 570, 92 S.Ct. 2694 (1972). Nor may public employees be forced to give up their First Amendment rights as a condition of public employment. *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

71.    Plaintiff's protected speech was not made as part of his official duties.

72.    Plaintiff was engaged in a constitutionally protected activity.

73.    Defendants' adverse action caused Plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity. Plaintiff's interests in the protected speech as a citizen outweigh the interests of the government as an employer. Plaintiff does not occupy a confidential or policy making position. Plaintiff's speech is drawn from public records and does not undermine a legitimate goal or mission of his employer. Furthermore, a core concern of the First Amendment is the protection of those attempting to expose misconduct. Plaintiff was concerned with bringing to light actual or potential

wrongdoing or breach of trust.  Plaintiff's speech was confined to a proper time, place and manner.

74.     "Teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allotted to the operations of the schools should be spent.  Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal."  *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed. 811 (1968), cited with favor in *Garcetti v. Ceballos*, 126 S.Ct. 1951 (2006).

75.     The interests of University of Southern Mississippi and College of Business in limiting Plaintiff's "opportunities to contribute to public debate is not significantly greater than its interest in limiting similar contribution by any member of the general public." *Pickering* at 573.

76.     Adverse employment action by Defendants was motivated as a response to Plaintiff's exercise of his Constitutional rights.

77.     Plaintiff is not required to exhaust University of Southern Mississippi or College of Business administrative remedies prior to filing suit.  The Supreme Court has held that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." *Patsy v. Board of Regents of the State of Florida*, 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982)

WHEREFORE, Plaintiff respectfully asks the Court to declare that the adverse employment action taken against Plaintiff is unconstitutional, to immediately enjoin Saunders and Williams from further adverse employment action taken against Plaintiff, and to reinstate Plaintiff in his normal duties as a Professor, as well as all other relief to which Plaintiff may be entitled.

## SECOND CAUSE OF ACTION

## DENIAL OF DUE PROCESS

78.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 77 supra.

79.     The Due Process Clause of the Fourteenth Amendment provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures.  Plaintiff's liberty interests are implicated where his "'good name, reputation, honor, or integrity is at stake because of what the government is doing to him.'"  *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed. 548 (1972).  By virtue of the accusations leveled against Plaintiff, Defendants violated Plaintiff's rights under 42 U.S.C. § 1983 in that the charge implicates Plaintiff's interest in his good name and reputation because the allegations and subsequent sanctions imposed by or on behalf of Defendants have seriously damaged his standing and associations in his community.

80.     As a tenured professor of accounting at School of Accountancy and Information Systems, College of Business, University of Southern Mississippi, Plaintiff has a property interest in, and an expectation of continued employment.

81.     University of Southern Mississippi has repeatedly failed to follow its own procedures by either failing to address appeals/grievances relating to Plaintiff's annual evaluations on a timely basis or by addressing the appeals by unauthorized procedures.  One appeal has been pending for nearly three years without resolution.  In fact, with respect to Plaintiff's 2003 evaluation, Grimes took no action for more than two years.  Such unwarranted delay has denied Plaintiff, *inter alia*, increases in pay and opportunities for service.  Such systemic delay amounts to violation of Plaintiff's due process rights.

82.    Plaintiff was suspended from his teaching duties and excluded from his office without notice or an opportunity to rebut the matters contained in the letters and memoranda attached to Exhibit 1. University of Southern Mississippi has offended Plaintiff's procedural due process rights by not affording Plaintiff any opportunity to be heard on any of the claims asserted in the letters and memorandum attached to Exhibit 1 prior to the deprivation of his constitutionally protected rights.

83.    Plaintiff was entitled to, but denied, the protections of due process before defendant Saunders significantly and wrongfully altered Plaintiff's employment status in the manner described above.

WHEREFORE, Plaintiff respectfully asks the Court to declare that the adverse employment action taken against Plaintiff is unconstitutional, to immediately enjoin Saunders and Williams from further adverse employment action taken against Plaintiff, and to reinstate Plaintiff in his normal duties as a Professor, as well as all other relief to which Plaintiff may be entitled.

## THIRD CAUSE OF ACTION

## DEPRIVATION OF SUBSTANTIVE DUE PROCESS

84.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 83 supra.

85.    Saunders, Williams and Jackson made arbitrary and capricious decisions significantly affecting Plaintiff's employment. The stated reasons are trivial, unrelated to the education process and wholly unsupported by a basis in fact.

86.    Further, the actions taken by Saunders, Williams and Jackson in suspending plaintiff are without any basis in Mississippi law, Institutions of Higher Learning regulations or University regulations.

WHEREFORE, Plaintiff respectfully asks the Court to declare that the adverse employment action taken against Plaintiff is unconstitutional, to immediately enjoin Saunders and Williams from further adverse employment action taken against Plaintiff, and to reinstate Plaintiff in his normal duties as a Professor, as well as all other relief to which Plaintiff may be entitled.

## PENDENT STATE CLAIMS

## DEFAMATION

87.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 86 supra.

88.    In an effort to procure Plaintiff's dismissal, Williams submitted to Saunders a memorandum.  The allegations of the memorandum are incorporated by reference as if set forth herein.  The allegations of the memorandum are materially false and known, or reasonably should have been known to be false, by Williams.  Among the false statements is Williams' claim that "[d]uring the Maintenance of Accreditation Visitation Team in 2007, Dr. DePree was the only faculty member deemed neither academically-or-professionally qualified."  As set forth in Exhibit 14, which was submitted to the Association for Advancement of Collegiate Schools of Business, its accrediting agency, by College of Business and School of Accountancy and Information Systems, the College asserted that Plaintiff was, in fact, academically qualified.  The only School of Accountancy and Information Systems faculty member identified by School of Accountancy and Information Systems and the College of Business as neither academically-or-

professionally qualified is Dr. Marvin Albin.  Furthermore, in the Maintenance of Accreditation Report delivered to School of Accountancy and Information Systems and College of Business, AACSB stated that only 58 percent of the School of Accountancy and Information Systems faculty were academically qualified.  (Exhibit 15).  Williams further falsely and maliciously portrays Plaintiff as being physically dangerous.  The allegations of the Williams' memorandum are false, malicious, and intended to portray Plaintiff in a false light.  Williams' libel is clear and unmistakable from the words of the subject memorandum.  The false and malicious statements have injured Plaintiff's reputation, diminished the esteem, respect, goodwill, or confidence in which Plaintiff is held, and have excited adverse, derogatory or unpleasant feelings or opinions against Plaintiff.  Accordingly, Williams' false and malicious statements are not protected by any privilege.

89.    In an effort to procure Plaintiff's dismissal, Jackson submitted to Williams a memorandum.  The allegations of the memorandum are materially false and known, or reasonably should have been known, to be false by Jackson.  The allegations of the memorandum are incorporated by reference as if set forth herein.  Jackson offers no independent observations to confirm the false statements that Plaintiff wrongfully recorded statements made by others or that Plaintiff created a safety-hazard.  Jackson's libel is clear and unmistakable from the words themselves. The false and malicious statements have injured Plaintiff's reputation, diminished the esteem, respect, goodwill, or confidence in which Plaintiff is held, and have excited adverse, derogatory or unpleasant feelings or opinions against Plaintiff.  Accordingly, Jackson's false and malicious statements are not protected by any privilege.

90.    In an effort to procure Plaintiff's dismissal, Brown submitted to Jackson a memorandum.  The allegations of the memorandum are incorporated by reference as if set forth

herein.  Brown reveals that the basis for seeking Plaintiff's dismissal is retaliation for Plaintiff's exercise of his First Amendment Rights.  The false and malicious statements have injured Plaintiff's reputation, diminished the esteem, respect, goodwill, or confidence in which Plaintiff is held, and have excited adverse, derogatory or unpleasant feelings or opinions against Plaintiff. Accordingly, Brown's false and malicious statements are not protected by any privilege.

91.    In an effort to procure Plaintiff's dismissal, Henderson submitted to Jackson a memorandum. The allegations of the memorandum are incorporated by reference as if set forth herein.  Henderson acknowledges that the basis for seeking Plaintiff's dismissal is retaliation for Plaintiff's exercise of his First Amendment Rights.  Henderson falsely claims, *inter alia,* that Plaintiff destroyed public property.  Henderson's libel is clear and unmistakable from the words themselves.  The false, malicious statements have injured Plaintiff's reputation, diminished the esteem, respect, goodwill, or confidence in which Plaintiff is held, and have excited adverse, derogatory or unpleasant feelings or opinions against Plaintiff.  Accordingly, Henderson's false, malicious statements are not protected by any privilege.

92.    In an effort to procure Plaintiff's dismissal, Pate submitted to Jackson a memorandum.  The allegations of the memorandum are incorporated by reference as if set forth herein.  Pate wrongfully and maliciously blames, *inter alia*, Plaintiff for creating an atmosphere of physical fear within the College of Business.  However, she does not offer a single objective fact in support of said claim.  Pate has maliciously repeated hearsay and false statements in retaliation for Plaintiff's exercise of his First Amendment Rights.  Pate's libel is clear and unmistakable from the words themselves and not the product of any innuendo, speculation or conjecture.  The false, malicious statements have injured Plaintiff's reputation, diminished the esteem, respect, goodwill, or confidence in which Plaintiff is held, and have excited adverse,

derogatory or unpleasant feelings or opinions against Plaintiff. Accordingly, Pate's false, malicious statements are not protected by any privilege.

93.    In an effort to procure Plaintiff's dismissal, Posey submitted to Jackson a memorandum. The memorandum is incorporated as if set forth herein. Posey's claims, *inter alia*, that Plaintiff destroyed public property or is a violent person are malicious and false and known by Posey to be false. Posey's libel is clear and unmistakable from the words themselves. The false, malicious statements have injured Plaintiff's reputation, diminished the esteem, respect, goodwill, or confidence in which Plaintiff is held, and have excited adverse, derogatory or unpleasant feelings or opinions against Plaintiff. Accordingly, Posey's false, malicious statements are not protected by any privilege.

94.    In an effort to procure Plaintiff's dismissal, Munn submitted to Jackson a memorandum. The memorandum is incorporated as if set forth herein. The memorandum includes statements which are malicious and false, such as her contention that Plaintiff wants to "destroy the School of Accountancy and Information Systems and the College of Business." Munn's libel is clear and unmistakable from the words themselves. Plaintiff has slandered Defendant to other employees of the College of Business by stating that Plaintiff is "a psychopath" and "deranged". The false, malicious statements have injured Plaintiff's reputation, diminished the esteem, respect, goodwill, or confidence in which Plaintiff is held, and have excited adverse, derogatory or unpleasant feelings or opinions against Plaintiff. Accordingly, Munn's false, malicious statements are not protected by any privilege.

95.    In an effort to procure Plaintiff's dismissal, Jordan submitted to Jackson a memorandum. The memorandum is incorporated as if set forth herein. Jordan's claims that Plaintiff refused to produce research as required by his job duties so that he was not academically

qualified are malicious and false.   In fact, Jordan and others who prepared and presented documents to the accrediting agency represented that Plaintiff was in fact academically qualified. (Exhibit 14)   Jordan, as a member of the School of Accountancy and Information Systems faculty who assisted in the preparation of the documents submitted to the accrediting agency and who received copies of the report from the accrediting agency knew or reasonably should have know that his statements were malicious and false.

96.     Jordan further falsely and maliciously claims that Plaintiff attempted to sabotage accreditation efforts by refusing to post a 2006 *Strategic Finance* publication to a Sedona database used by the University to collect professional and academic information.   Said publication was posted and present for months prior to the AACSB visit.   Copies of the publication were provided to Lewis to be included in materials presented to AACSB as is established by College of Business records.

97.     Jordan's libel is clear and unmistakable from the words themselves.  The false, malicious statements have injured Plaintiff's reputation, diminished the esteem, respect, goodwill, or confidence in which Plaintiff is held, and have excited adverse, derogatory or unpleasant feelings or opinions against Plaintiff.   Accordingly, Jordan's false, malicious statements are not protected by any privilege.

98.     In an effort to procure Plaintiff's dismissal, Anderson submitted to Jackson a memorandum. The memorandum is incorporated as if set forth herein.  Anderson, *inter alia*, falsely and maliciously misrepresented Plaintiff's behavior at the May 4, 2007 College of Business faculty meeting.   Anderson's libel is clear and unmistakable from the words themselves.  The false, malicious statements have injured Plaintiff's reputation, diminished the esteem, respect, goodwill, or confidence in which Plaintiff is held, and have excited adverse,

derogatory or unpleasant feelings or opinions against Plaintiff.  Accordingly, Anderson's false, malicious statements are not protected by any privilege.

99.    Within hours of Plaintiff's suspension, Defendant's libelous and slanderous statements described herein were excessively disclosed to co-workers and students, including disclosure to a forum board known as University of Southern Mississippi Forum—"to build trust, build a team and build a campus"- Message Board.

100.    On information and belief, Plaintiff states that prior to drafting the letters and memoranda with which to procure termination of Defendant's employment, and continuing for a period of years, Defendants identified in this count, including Munn and John Doe Defendants, formed a longstanding hatred of Plaintiff for reporting acts of misconduct within the School of Accountancy and Information Systems and College.  These Defendants repeatedly made false, malicious statements to faculty, co-workers and students including but limited to false, unfounded and malicious claims that Plaintiff was, among other things, crazy, psychopathic, mentally unstable and violent which were intended to and did cause him injury.

101.    Defendants' malicious and false claims that Plaintiff abused his position of trust with students, has maliciously failed to perform his duties constitute acts of defamation *per se*.

102.    Defendants' malicious and false claims that Plaintiff is dangerous, violent and crazy in the wake of the Virginia Tech tragedy are defamatory *per se*.

103.    In making all such statements, Defendants acted with actual or express malice. Defendants' statements were motivated by ill will, a sentiment of hate or spite.  Defendants acted with ill will with a design to willfully and wantonly injure Plaintiff.  Defendants' false, malicious statements are not protected by any privilege.

WHEREFORE, Plaintiff prays for compensatory and punitive damages, costs, attorneys' fees and all other relief to which he may be entitled.

## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

104.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 103 supra.

105.    Defendants' acts as alleged herein were intentional and willful.

106.    Defendants' joint and several acts as alleged herein were calculated to cause damage to Plaintiff in his lawful profession and his tenured relationship with his employer, University of Southern Mississippi.

107.    Defendants' joint and several acts as alleged herein were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the Defendants, which constitutes malice.

108.    Actual damage and loss to Plaintiff resulted from Defendants' joint and several acts.

WHEREFORE, Plaintiff prays for compensatory and punitive damages, costs, attorneys' fees and all other relief to which he may be entitled.

## ASSAULT

109.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 108 supra.

110.    Defendant Niroomand did by his intentional act of aggressively walking toward Plaintiff, yelling at Plaintiff, repeatedly referring to Plaintiff as a "son-of-a-bitch", and shaking papers in his face create an apprehension in Plaintiff of an imminent harmful or offensive contact.

111.    As a proximate result of Niroomand's wrongful actions, Plaintiff was caused to suffer damages.

WHEREFORE, Plaintiff prays for compensatory and punitive damages, costs, attorneys' fees and all other relief to which he may be entitled.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

112.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 111 supra.

113.    Defendants' acts as alleged herein were malicious, intentional, willful, wanton, grossly careless, indifferent and reckless.

114.    Defendants' joint and several acts as alleged herein were on their face outrageous, malicious and intentional.

115.    The emotional trauma caused by Defendants was a reasonably foreseeable consequence of the joint and several acts of said Defendants.

116.    As a proximate result of Defendants' wrongful actions, Plaintiff was caused to suffer damages.  Actual damage and loss to Plaintiff resulted from Defendants' joint and several acts.

WHEREFORE, Plaintiff prays for compensatory and punitive damages, costs, attorneys' fees and all other relief to which he may be entitled.

## BREACH OF CONTRACT AND BREACH OF A CONTRACTUAL DUTY OF GOOD FAITH AND FAIR DEALING

117.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 116 supra.

118.    Plaintiff is a tenured professor at the University of Southern Mississippi.  As such he enjoys a contractual right to continued employment.

119.    Every contract in the State of Mississippi carries with it an inherent covenant of good faith and fair dealing.

120.    Defendants' conduct as it relates to plaintiff is a breach of good faith characterized by conduct which violates standards of decency.   Defendants conduct was dishonest of purpose or of moral obliquity.

121.    As a proximate result of Defendants' wrongful actions, Plaintiff was caused to suffer damages.  Actual damage and loss to Plaintiff resulted from Defendants' joint and several acts.

WHEREFORE, Plaintiff prays for compensatory and punitive damages, costs, attorneys' fees and all other relief to which he may be entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays (1) a declaratory judgment that the defendants' conduct unlawfully violates his right to freedom of speech under the First and Fourteenth Amendments; (2) a declaratory judgment that the defendants' conduct unlawfully denies Plaintiff his civil rights under color of state law in violation of section 1983; (3) a permanent order enjoining defendants from acting to prevent Plaintiff from teaching at USM or from otherwise punishing him on the basis of protected speech; (4) a permanent order affirmatively enjoining Defendant Saunders to assure that Plaintiff's grievances are properly processed according to the established rules and regulations of University of Southern Mississippi and are processed in a timely and effective manner; (5) damages under section 1983 from Defendants jointly and severally for the unlawful violation of Plaintiff's First Amendment

right to freedom of speech and his Fourteenth Amendment right to procedural and substantive due process; (6) damages under pendent law claims from Defendants, jointly and severally, including compensatory and punitive damages under Mississippi law; and (7) pre-judgment and post-judgment interest; and (8) an award of reasonable costs and attorneys' fees pursuant to section 1988 and under Mississippi law.

Respectfully submitted,

Stanton J. Fountain, Jr., MS Bar No. 5447
Attorney at Law
963 Howard Avenue
P.O. Box 817
Biloxi, MS 39533
(228) 374-3327
(228) 435-1641 (facsimile)

Rebecca Kathryn Jude, MS Bar No. 3248
Cyrus C. Barger, III, MS Bar No. 101354
JUDE & JUDE, PLLC
6424 US Hwy 98 West, Suite 50
P.O. Box 17468
Hattiesburg, MS 39404-7468
Telephone: (601) 579-8411
Facsimile: (601) 579-8461

**<u>VERIFICATION</u>**

County of Lamar
State of Mississippi

I have personally reviewed the allegations of the Complaint and state on personal

knowledge and information and belief that the same are true.

Chauncey M. DePree, Jr.

Subscribed and sworn to before me, this the 7 day of September, 2007.

*Teresa C. Hanes Forest County State of MS*
Notary Public, State at Large

*My Commission expires on January 23, 2009*