**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**


**CHAUNCEY M. DEPREE, JR.**                                                        **PLAINTIFF**

**VERSUS**                                            **CIVIL ACTION NO. 2:07cv185KS-MTP**

**MARTHA SAUNDERS, ET AL**                                                **DEFENDANTS**


## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Summary Judgment and Qualified Immunity **[#38]**, filed on behalf of the defendants.  The court, having reviewed the motion, the responses, the pleadings and exhibits on file and being otherwise fully advised in the premises, finds that the motion should be granted.  The court specifically finds as follows:


## FACTUAL BACKGROUND

Dr. Chauncey M. DePree, Jr., is a professor of accounting in the School of Accountancy and Information Systems (SAIS), one of the departments within the College of Business at The University of Southern Mississippi.  In September 2007, Dr. DePree, filed a complaint against fourteen University employees alleging violations of his federal constitutional rights and a host of other causes of action arising under state law, including breach of contract.  The defendants are all administrators or professors at the University.  The plaintiff brought suit against the defendants in their individual and official capacities alleging that the plaintiff had been subjected to violations of Constitutional rights as guaranteed by the First Amendment and for violation of his right

to substantive due process of law as protected by the Fourteenth Amendment.  In particular, Dr. DePree claims the defendants have retaliated against him because he "maintains a website which is viewed by them as critical of the College of Business and some of its faculty administrators."  Complaint, ¶ 28.  He also claims the defendants seek to terminate his employment because he complained to the accrediting agency about the College of Business.  Additionally, the plaintiff has presented pendent state claims of defamation, tortious interference with business relations, assault, intentional infliction of emotional distress, breach of contract, and breach of contractual duties of good faith and fair dealing.

The plaintiff filed his complaint in this court after he received a letter from the University's President, Dr. Martha D. Saunders, dated August 21, 2007.  In this letter, Saunders explained to DePree that she had received letters of complaint about DePree from several of his colleagues in the College of Business.  Copies of the complaints were enclosed with Saunders' letter to DePree, and DePree attached the letters as an exhibit to his complaint, which is before the court.

The letters had been presented to Saunders from Alvin J. Williams, Interim Dean of the College of Business.  Dr. Williams' letter indicated that "Over the past several years, Dr. DePree has engaged in behaviors that have severely constrained the capacity of [the School of Accountancy and Information Systems] and the College of Business to function at levels necessary to foster an appropriate learning environment for students and a collegial atmosphere for faculty to teach, conduct research, and perform professional service."  The letter also said that "Dr. DePree has helped create an environment in which faculty members and students do not feel safe to go about

their usual business in Joseph Green Hall."  Williams' letter described additional negative and disruptive behaviors and he enclosed letters from eight other professors in the College of Business and the School of Accountancy further describing alleged disruptive and intimidating conduct of the plaintiff.

Saunders told the plaintiff that she was referring the matter to the Provost for further proceedings and relieved the plaintiff of all teaching functions and service obligations to the University.  She instructed Dr. DePree not to enter the business school except to remove personal items from his office.  Saunders told him that he was to continue with research activities and would be allowed continued computer access on university computers and unfettered access to the University Library.

The plaintiff initiated this action on September 7, 2007, with the filing of a petition for temporary restraining order requesting the court to reverse Dr. Saunders' ruling confining him to full time research activities without any teaching or service responsibilities.  The court conducted a hearing on September 27 and determined that a TRO should not issue based on its finding that Dr. DePree had neither been suspended nor terminated and therefore suffered no harm or any adverse employment action.  The court also ruled that Dr. DePree had failed to show a nexus between his alleged First Amendment activity and the decision of Saunders referring the complaints to the Ombudsman and restricting Dr. DePree to full-time research.

Following the September hearing, the Ombudsman issued a report on December 5, 2007, a copy of which was sent to the plaintiff.  After reviewing the Ombudsman's report, President Saunders then wrote a letter to Dr. DePree in which she announced she had reached the following conclusions that she believed were in the best interest of

the University and in Dr. DePree's best interest, as well:

    1.    The University, at no cost to you, will enlist the services of an independent mental health professional to review the facts of this case, to evaluate you, and to make a professional assessment of your fitness for your duty in the classroom.  By copy of this letter, I am instructing the University Counsel to make arrangements with your attorney to facilitate this process.

    2.    You are to produce sufficient scholarly activity to become academically qualified.  The University will consult with one or more independent, qualified professionals to assist the University in assessing whether you have become academically qualified.

    Until the above goals have been accomplished, I am continuing to relieve you of your teaching and service obligations to the University. You will be expected to devote your efforts full-time to your research program.  Your usual library and computer privileges remain intact and your rate of pay and other benefits remain undisturbed.  As instructed by my letter of August 21, 2007, you will need to refrain from entering Joseph A. Green Hall except to remove your personal property and the University computer assigned to you, if you have not already done so.

Meanwhile, the University has taken no further action to suspend, discipline, or terminate the plaintiff and neither his pay nor his benefits have been affected.  Dr. DePree, through his attorneys, rejected President Saunders' proposal to enlist the services of a mental health professional.  Further, there is no evidence that Dr. DePree has made an effort to enable the University to assist him with improving his research or to have the research evaluated by an independent consultant to determine if it meets AACSB standards.  Nor has Dr. DePree presented a counterproposal to Dr. Saunders' proposal outlined in her letter.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment

where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477

-5-

U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).  In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn

allegations in the pleadings or arguments and assertions in briefs or legal memoranda.
The nonmoving party's response, by affidavit or otherwise, must set forth specific facts
showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also,
Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the]
court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents
merely filed and those singled out by counsel for special attention-the court must
consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting
*Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

The Fifth Circuit has held that "government officials performing discretionary
functions are protected from civil liability under the doctrine of qualified immunity if their
conduct violates no 'clearly established statutory or constitutional rights of which a
reasonable person would have known.'"  *Sorenson v. Ferrie*, 134 F.3d 325, 327 (5th Cir.
1998)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed.
2d 396 (1982)).

Under the two step analysis employed by the Fifth Circuit in reviewing claims
wherein qualified immunity has been asserted, the court must first determine "whether
the plaintiff has asserted the violation of a clearly established constitutional right.  If so,
the court decides whether the defendant's conduct was objectively reasonable."
*Sorenson*, 134 F.3d at 327 *(*quoting *Coleman v. Houston Indep. Sch. Dist.,* 113 F.3d
528, 533 (5th Cir. 1997)(applying the two-prong test of *Siegert v. Gilley*, 500 U.S. 226,
231-32, 111 S. Ct. 1789, 1792-93, 114 L. Ed. 2d 277 (1991)).  The first step "is
subdivided into three questions: (1) whether a constitutional violation is alleged; (2)

-7-

whether the law regarding the alleged violation was clearly established at the time of the alleged violation; and (3) whether the record shows that a violation occurred." *Dudley v. Angel*, 209 F.3d 460, 462 *(*quoting *Kerr v.Lyford,* 171 F.3d 330, 339 (5th Cir. 1999)*(*citing *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988)).

42 U.S.C. § 1983 creates a private cause of action for violations of Constitutional rights perpetrated by any person acting under color of State law.  The plaintiff alleges that his Constitutional rights to freedom of speech were violated when Saunders suspended him by removing him from his classroom and office in retaliation for publishing a website and for filing complaints with AACSB, the College of Business' accrediting agency. The plaintiff must establish, as a prerequisite to maintaining a Section 1983 claim, the following:

(a) that the defendants were acting under color of state law, and

(b) that while acting under color or state law, the defendants violated rights of the plaintiff that are protected by the United States Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535; 101 S.Ct. 1908, 1912; 68 L.Ed.2d 420 (1981); *Augustine v. Doe*, 740 F.2d 322, 324 (5th Cir. 1984).

To prove a retaliation claim based on the First Amendment, Dr. DePree must prove:(1) he engaged in speech on a matter of public concern, (2) he suffered an adverse employment action for exercising his First Amendment rights, (3) his interest in commenting on matters of public concern outweighs the University's interest in promoting efficiency; and (4) the exercise of free speech motivated the adverse employment action.  *Beattie v. Madison County School District*, 245 F.3d 595, 602 (5th Cir. 2001) (citing *Harris v. Victoria Indep. Scho. Dist.*, 168 F.3d 216, 220 (5th  Cir.

-8-

1999)).

The plaintiff's right to exercise his First Amendment Rights is well established. According to the Fifth Circuit, "[s]ince 1983, the year the Supreme Court decided *Connick*, government employers have known that, unless their interest in efficiency at the office outweighs the employee's interest in speaking, they cannot [discipline] their employees for making statements that related to the public concern." *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 37 (5th Cir. 2000)." In 2006, *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 64 L.Ed.2d 689 (2006) added an additional element: "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id*. at 1960. The defendants apparently do not claim that the plaintiff's speech was other than a matter of public concern or that his interest in speaking outweighed the defendants' interest in promoting efficiency.

Instead, the defendants assert that Dr. DePree cannot show that a protected federal right has been violated because he has failed to establish an essential element of a First Amendment retaliation claim -- that he has suffered an adverse employment action. They also argue that he has failed to show any causal link between any conduct of the defendants and any alleged adverse employment action.

In response, the plaintiff argues that he has been subjected to several adverse employment actions, among them: he has for an extended period of time been excluded from service activities because the defendants have "blackballed" him, claiming that he might use statements made by them on his website and that he has been subjected to

arbitrary and capricious evaluations by Posey, Lewis, Doty, Williams and Grimes.  In this regard, Dr. DePree asserts that former President Shelby Thames and now President Saunders have refused to address the plaintiff's grievances and appeals since the plaintiff's 2003 evaluation.  By virtue of these alleged retaliatory and incomplete evaluations, the plaintiff contends that he has been denied opportunities for pay raises comparable to other faculty based on his actual performance.

Dr. DePree also argues that he has been subjected to being blind-sided at meetings with verbal attacks based on his exercise of First Amendment rights with the advance knowledge and support of Interim Dean Williams and that he has been verbally assaulted and placed in fear of imminent bodily injury in retaliation for his exercise of First Amendment Rights.  The plaintiff alleges that Dr. Saunders has wholly ignored his contemporaneous claims of assault, mobbing and efforts of others to retaliate for his alleged exercise his First Amendment Rights.  Finally, the plaintiff contends that he has been removed from his classroom and office under stigmatizing conditions and has been subjected to an internal investigation based on claims that the defendants knew or should have known were false.

The plaintiff argues that Dr. Saunders' claim that no disciplinary action has been taken is at best disingenuous.  He claims that Dr. Saunders' affidavit and subsequent deposition testimony excludes and misstates facts that demonstrate that the plaintiff was subjected to adverse action.  According to Dr. DePree, under the best factual scenario for the defendants, the issue of an adverse employment action presents a genuine issue of material fact; and at worst, the facts present a basis for this court to rule that the plaintiff has been subjected to adverse employment action.  The court

disagrees.

This court found at the conclusion of Dr. DePree's TRO hearing that the plaintiff had suffered no adverse employment action.  At this point, Dr. DePree has neither been suspended nor terminated, and neither the University nor any of the fourteen individual defendants have taken any steps to suspend, discipline, or terminate Dr. DePree. President Saunders has instructed the plaintiff to devote his efforts full-time to his research program, as opposed to splitting his time among research, teaching, and service obligations.  Dr. DePree remains a member of the University faculty.  He receives the same pay and benefits as before and he retains the same title.  He also has access to the University's library and computer services.

However, in addition to directing the plaintiff to perform full-time research, Dr. Saunders, through her letter of April 7, 2008, directed DePree to participate in a psychological assessment to determine whether DePree presented a safety risk to his colleagues. This requirement, in light of the testimony of the individual defendants which demonstrates that their fears of Dr. DePree are largely unfounded, appears to be on dubious footing.  It does not, however, rise to the lever of an adverse employment action.

The Fifth Circuit has held that requiring an employee to undergo psychological testing to determine one's fitness for duty is not an adverse employment action.  See *Breaux v City of Garland*, 205 F.3d 150,154-158 (5th Cir. 2000); *Benningfiel v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998).  A testing requirement as part of an investigation "designed to gather facts to form the basis for an employment decision" is not an adverse employment action.  *Benningfiel,* 157 F.3d at 376.  An investigation is

-11-

not an adverse employment action. *See Pierce v. Texas Dep't of Criminal Justice*, 37 F.3d 1146, 1150 (5th Cir. 1994). To the extent that such an examination can be justified as part of the President's investigation, it is not an employment action. However, as stated, it appears that such a requirement is somewhat debatable in light of the Ombudsman's findings and the testimony of the individual defendants. But no action has been taken against the plaintiff for his failure to submit to such an examination and simply requiring it, without more, is not an adverse employment action. The plaintiff has once again failed to demonstrate what he failed to do at the TRO hearing, *i.e.*, that he has suffered any adverse employment action at the hands of the defendants. This is fatal to his federal constitutional claims.

As well, the defendants argue that Dr. DePree cannot  show deprivation of a protected liberty or property interest of which he has been deprived of due process. Without such a property interest , "no right to due process can accrue." *Pruett v. Dumas*, 914 F. Supp. 133 (N.D. Miss. 1996)(citing *Moore v. Miss. Valley St. Univ.*, 871 F.2d 545, 548 (5th Cir. 1989)).  To have a right protected by federal due process, DePree must first have a right established under state law*. Board of Regents of State Colleges v. Roth*, 408 U.S. 546, 566-67 (1972); *Hall v. Bd. of Trustees of St. Institutions of Higher Learning*, 712 So. 2d 312, 321 (Miss. 1998).

The defendants acknowledge that the plaintiff has a protected property interest in tenure.  However, they assert that he cannot identify any place in the University's Faculty Handbook or Mississippi law giving a tenured professor a property interest in teaching, as opposed to a full-time research assignment.  He fails to do so because such a position is contrary to existing law.  *See Maples v. Martin*, 858 F.2d 1546, 1548-

49 (11th Cir. 1988) (holding that "[t]ransfers and reassignments have generally not been held to implicate a property interest and finding that university professors' due process and First Amendment rights were not violated when they were transferred from one department to another); *Childers v. Indep. Sch. Dist.*, 676 F.2d 1338, 1341 (10th Cir.1982) (tenured teacher has property interest in continued employment but not in particular assignment); *Kelleher v. Flawn*, 761 F.2d 1079, 1087 (5th Cir. 1985) (reappointment of faculty member with reduction of teaching duties does not deprive plaintiff of property interest; because under Texas law, no statue or ordinance supplies a basis for a claim of entitlement to a teaching position, as opposed to other academic duties);  *Wagner v. Texas A & M University*, 939 F. Supp. 1297, 1312 (S.D. Tex. 1996)(finding no property interest existed in teaching a particular course or in teaching at all).  The court finds that because Dr. DePree has no particular property interest in teaching, as opposed to r research, he has not stated a valid due process claim related to his removal from teaching.

Since the plaintiff has failed to show a violation of a constitutionally protected right, it is not necessary for the court to reach the qualified immunity issues related to the individual defendants.


## STATE LAW CLAIMS

The defendants assert that the plaintiff cannot establish the essential elements for breach of contract as alleged in his complaint.  In order to prevail on such a claim, the plaintiff has the burden of proving by a preponderance of the evidence: (1) the existence of a valid and binding contract; (2) that the defendant has broken, or

breached it; and (3) that he has been damaged monetarily by the breech. *Warwick v. Matheney*, 603 So.2d 330, 336 (Miss. 1992).  The court finds that Dr. DePree cannot show that any defendant breeched his contract of employment.  Dr. DePree has simply been directed to conduct research away from the College of Business pending resolution of the complaints.  As previously stated, his rate of pay and benefits remain unaffected.  Because his rate of pay and benefits remain unchanged, he cannot show he has been damaged and his breach of contract fails as a matter of law.

Act.

The defendants also argue that Dr. DePree's state law tort claims should be dismissed under the Mississippi Tort Claims Act.  The Mississippi Tort Claims Act ("MTCA") "is the exclusive route for filing suit against a governmental entity and its employees."  *City of Jackson v. Sutton*, 797 So.2d 977, 980 (Miss. 2001).  "Any claim filed against a governmental entity and its employees must be brought under this statutory scheme." *Lang v. Bay St. Louis/Waveland Sch. Dist.*, 764 So.2d 1234, 1236 (Miss. 1999). DePree's state-law tort claims are governed by the MTCA.   The defenants assert that Dr. DePree's tort claims are precluded because he did not exhaust his administrative remedies as required under the MTCA.

In order to invoke the MTCA, a plaintiff must first exhaust all available administrative remedies.  *See Morehead v. Miss. Safety-Responsibility Bureau*, 99 So.2d 446, 448 (Miss. 1958) (holding that failure to exhaust one's prescribed administrative remedies precludes subsequent resort to courts).  Dr. DePree filed this lawsuit before the University made any decision regarding the complaints.  He did not wait for the outcome of the University's decision; instead, he filed this lawsuit without knowing if the University will institute termination proceedings or discipline him.

The Faculty Handbook provides a comprehensive process for termination of tenured professors.  Ex. No. 5, Faculty Handbook, Chapter 10.  The court finds that Dr. DePree's tort claims are precluded because he did not exhaust his administrative remedies as required by the MTCA.

The defendants argue that they are immune from suit under the discretionary function exemption of the MTCA even if Dr. DePree had complied with the procedural requirements of the MTCA.  Except in the limited circumstances under which the State has waived immunity, the principles of sovereign immunity dictate that the State and its political subdivisions are immune from lawsuits.  *See Quinn v. Miss. State Univ.*, 720 So.2d 843, 848 (Miss. 1998) (holding sovereign immunity available to university in period prior to waiver of immunity).  The doctrine of sovereign immunity protects the State and its political subdivisions from actions grounded in tort.  *See Richardson v. Rankin County Sch. Dist.*, 540 So.2d 5, 8(Miss. 1989).  The doctrine also encompasses any claims sounding in tort, but stated as contractual claims.  *See, e.g., Miss. State Bldg. Comm'n v. S & S Moving, Inc.*, 475 So.2d 159, 161 (Miss. 1985).

The Mississippi Tort Claims Act expressly retains absolute immunity for claims arising from discretionary functions:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
> . . .
> (d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

Miss. Code Ann. § 11-46-9(1)(d).

Courts applying Mississippi law have consistently held that sovereign immunity is a bar to actions against public officials and public employees acting within the scope of

their duties and performing discretionary functions.  *See Martin v. Memorial Hosp. at Gulfport*, 881 F. Supp. 1087 (S.D. Miss. 1995); *Glover v. Donnell*, 878 F. Supp. 898 (S.D. Miss. 1995); *Raju v. Rhodes*, 809 F. Supp. 1229 (S.D. Miss. 1992), aff'd, 7 F.3d 1210 (5th Cir. 1993); *Barrett v. Miller*, 599 So.2d 599 (Miss. 1992); *Sykes v. Grantham*, 567 So.2d 200 (Miss. 1990); *McFadden v. State*, 542 So.2d 871 (Miss. 1989); *Region VII, Mental Health Center v. Isaac*, 23 So.2d 1013 (Miss. 1988); *Brazeale v. Lewis*, 498 So.2d 321 (Miss. 1986).

A discretionary function is one which requires "personal deliberation, decision and judgment."  *Davis v. Little*, 362 So.2d 642, 643 (Miss. 1978).  Because the purpose of the immunity is to protect the official in his decision-making role, the immunity applies to a challenged action involving a discretionary decision-making process.  *Id.* at 644. The Mississippi Supreme Court has explained the principles of the sovereign immunity defense:

> The basis for extending sovereign immunity to government officials lies in the inherent need to promote efficient and timely decision-making without lying in fear of liability for miscalculation or error in those actions. The immunity defense has generally been extended to officials' discretionary acts in most states, Mississippi ranking among them.

 *Brazeale*, 498 So.2d at 322.  Poor judgment in the exercise of discretionary authority is insufficient to pierce sovereign immunity. *Sykes v. Grantham*, 567 So.2d at 212.  An employment decision is a classic discretionary function.  *See, e.g., Levens v. Campbell*, 733 So.2d 753, 764 (Miss. 1999) ("duties as to employee hiring were discretionary"); *Staheli v. Smith*, 548 So.2d 1299 (Miss. 1989) (evaluation of personnel is a discretionary function); *Miss. Forestry Comm'n v. Piazza*, 513 So.2d 1242 (Miss. 1987).

At all times relevant to Dr. DePree's complaint, Dr. Saunders was acting within the course and scope of her employment by exercising discretionary employment

decisions regarding the plaintiff.  By writing letters to Dr. Saunders regarding Dr. DePree's conduct and its impact on the College of Business, all other defendants were acting within the course and scope of their employment as professors.  All letters related to the performance of their jobs and the impact of Dr. DePree's conduct on their ability to perform their duties.  All defendants are, therefore, immune from liability for Dr. DePree's state-law tort claims.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment**[#38]** filed on behalf of the defendants is hereby granted and the plaintiff's complaint is dismissed with prejudice as to all defendants.  Any other pending motion is denied as moot.  A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 30th day of September, 2008.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE